Daniel C. Green (ISB No.3213)
Heidi Buck Morrison (ISB No. 9396)
RACINE OLSON, PLLP
201 E. Center Street
P.O. Box 1391
Pocatello, Idaho 83204
Phone: (208) 232-6101
Fax: (208) 232-6109
dan@racineolson.com
heidi@racineolson.com

*Attorneys for William L. Horoszko*

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| IN RE:<br><br>STEPHEN A. DEVEREAUX and KATHERINE C. BLOMQUIST,<br><br>Debtors. | Case No. 24-40069-NGH<br>(Chapter 13) |
| WILLIAM L. HOROSZKO<br><br>Plaintiff,<br><br>v.<br><br>STEPHEN A. DEVEREAUX,<br><br>Defendant. | Adversary Case No. 24-08017-NGH |

**AMENDED ADVERSARY COMPLAINT**

COMES NOW, Plaintiff William L. Horoszko, by and through his attorneys of record, Racine Olson, PLLP, and for his cause of action against the above-named Defendant, states and alleges as follows:

**AMENDED ADVERSARY COMPLAINT** – Page 1

## JURISDICTION

1. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157(a) and 11 U.S.C. § 523(a)(2), (4) and (6).

2. This proceeding is a core proceeding, pursuant to 28 U.S.C. § 157(b)(2)(I).

3. Venue in this District is proper pursuant to 28 U.S.C. § 1408.

## PARTIES

4. William Horoszko (hereafter, "Plaintiff") is identified by the Debtors in their Amended Schedule E/F as being a creditor holding unsecured priority and nonpriority claims. (Dkt. 25).

5. On February 18, 2024 (the "Petition Date"), Katherine C. Blomiquist[1] and Defendant Stephen A. Devereaux (the "Debtor") filed a voluntary petition for relief under Chapter 13 of the bankruptcy code in the United States Bankruptcy Court, in the District of Idaho, under Case No. 24-40069-NGH. (Dkt. 1).

## FACTUAL ALLEGATIONS

6. In 2009, Debtor requested that Plaintiff extend a loan to him in the sum of $115,000 for the purpose of purchasing his ex-spouse's interest in certain real property located at 14513 Biance Lane, Hinckley, DeKalb County, Illinois (the "Real Property") during divorce proceedings.

7. The parties were close personal friends and neighbors.

8. Plaintiff trusted the Debtor.

9. At the time of the loan, Debtor knew Plaintiff had money in a 401k account.

---

[1] This Adversary Complaint is against Stephen A. Devereaux only and not joint Debtor Katherine C. Blomquist.

**AMENDED ADVERSARY COMPLAINT** – Page 2

10. Debtor promised the Plaintiff that the loan would be repaid in full immediately upon the sale of the Real Property but the Debtor never intended to repay the loan.

11. Neither party knew when the Real Property would be sold, but the Debtor promised to repay the loan when the Real Property was sold, which occurred on October 1, 2021.

12. At the time the loan was requested in 2009, Debtor represented to Plaintiff he would prepare paperwork to evidence Plaintiff's interest in the Real Property, or in other words, that the loan would be secured by the Real Property.

13. Debtor's representation that the loan would be secured was material, because Plaintiff would not have otherwise lent him the money.

14. On information and belief, Debtor never intended to create paperwork to secure the loan, and no paperwork was ever prepared.

15. Debtor intentionally represented that falsehood to Plaintiff to induce him into lending Debtor the $115,000 and to prevent Plaintiff from seeking further legal remedies to either properly secure the debt or enforce the debt.

16. The Plaintiff, to his detriment, reasonably relied on Plaintiff's intentional and knowingly false representations that the loan would be and was secured.

17. Based on Debtor's representations as set forth herein, Plaintiff agreed to loan Debtor the amount requested of $115,000 on the principal conditions that (i) the loan would accrue interest on the unpaid balance at a rate of 5% per annum; and (ii) that the loan would be secured by the Real Property and repaid immediately upon the sale of the Real Property. Defendant repeatedly promised Plaintiff that the loan was secured and would be repaid upon sale of the Real Property.

**AMENDED ADVERSARY COMPLAINT** – Page 3

18. Accordingly, in reliance upon Debtor's representations, on July 29, 2009, Plaintiff withdrew $115,000 (the "Loan") from his personal retirement account to extend the Loan

19. Between 2009 and 2021, Debtor repeatedly assured Plaintiff that "documentation" existed evidencing Plaintiff's interest in the Real Property and the Loan would be repaid in full upon the sale of the Real Property.

20. Due to Debtor's knowingly false statements, Plaintiff believed the loan was secured.

21. Although the Debtor had assured the Plaintiff he would be paid when the Real Property sold, he made no effort to advise the Plaintiff of the forthcoming sale of the Real Property.

22. When the Real Property sold on October 1, 2021, Debtor failed to make the payment under the Loan.

23. Upon sale of the Real Property and thereafter, Debtor has refused and failed and continues to refuse to repay the Loan.

24. When Plaintiff discovered the Real Property had sold, Plaintiff inquired with the Debtor as to when he would be paid.

25. Debtor represented to Plaintiff that there was money in escrow to repay Plaintiff by stating in a text message on February 12, 2022 that there is money "in the escrow Bill." A true and correct copy of the text message from Debtor to Plaintiff is attached hereto as **Exhibit A**.

26. On information and belief, no money was ever placed into an escrow account to repay Plaintiff.

27. On information and belief, the Debtor knew that no money was placed in an escrow account for Plaintiff's benefit, and in representing the same to Plaintiff intended that Plaintiff would rely on the false statement and made the false statements to prevent the Plaintiff from pursuing his legal remedies to enforce the debt.

28. The Debtor's false representations regarding the loan being secured and that money was placed in escrow were part of Debtor's ongoing and intentional scheme to induce Plaintiff to loan him the $115,000 to which the Debtor never intended to repay.

29. Plaintiff reasonably relied, to his detriment, on Debtor's false representations that the sale proceeds were in an escrow account.

30. On March 23, 2023, Plaintiff filed suit against the Debtor seeking a money judgment for the amount of the Loan in the Circuit Court for the Twenty-Third Judicial Circuit De Kalb County, Illinois.

31. On the eve of trial in the Illinois case, the Debtor filed his Chapter 13 Bankruptcy Petition.

32. Debtors' Schedule E/F identifies Plaintiff's claim in the amount of $193,000.00 as an unsecured and disputed judgment. (Dkt. 1).

33. Because the Loan was obtained by false pretenses and false representations by the Debtor, the Debtor is not entitled to a discharge for the obligation he owes to Plaintiff.

34. Additionally, during the time period in which the Debtor continued to assure the Plaintiff that the Loan would be paid upon the sale of the Real Property and that money had been deposited in an escrow account, the Debtor filed a Chapter 13 bankruptcy in the United States Bankruptcy Court for the Northern District of Illinois (Western Division) under Case No. 17-80778 (the "Illinois Bankruptcy").

**AMENDED ADVERSARY COMPLAINT** – Page 5

35. The Illinois Bankruptcy was filed on March 31, 2017.

36. The Debtor knew the Loan was owed to Plaintiff on March 31, 2017.

37. The Debtor intentionally and knowingly failed to list the Loan as a liability in his bankruptcy schedules filed with the court in the Illinois Bankruptcy.

38. The Debtor's failure to list the Loan in his Illinois Bankruptcy schedules is further evidence that he never intended to repay the loan at the time he received it.

39. Because the Loan was not listed in his schedules, the Plaintiff received no notice of the Debtor's Illinois Bankruptcy and was unaware of its existence.

40. The Debtor confirmed a Chapter 13 Plan in the Illinois Bankruptcy on September 29, 2017 (the "Illinois Ch. 13 Plan") under which creditors, including unsecured creditors, were to receive a one hundred percent (100%) payout.

41. The Debtor completed his Illinois Ch. 13 Plan and received a discharge on November 29, 2021.

42. The Debtor's creditors were paid in full upon completion of the Illinois Ch. 13 Plan.

43. Had the Debtor listed the Loan as a liability in his Illinois Bankruptcy, the Plaintiff's Claim would have been included in and paid pursuant to the Illinois Ch. 13 Plan confirmed by the Debtor in the Illinois Bankruptcy case.

44. Under the Illinois Ch. 13 Plan, the Plaintiff would have received either full payment of his claim, and if not full payment, very close to full payment.

45. Because the Debtor failed to list the Plaintiff's Claim in the Illinois Bankruptcy and it was not paid through the Illinois Ch. 13 Plan, the Debtor has now included the Plaintiff's Claim in the subject bankruptcy.

**AMENDED ADVERSARY COMPLAINT** – Page 6

46. The Debtor's Amended Ch. 13 Plan has proposed a two percent (2%) payment to unsecured creditors.

47. Accordingly, the Plaintiff has been willfully injured by the Debtor's failure to list the Plaintiff's claim in his Illinois Bankruptcy Schedules.

## FIRST CAUSE OF ACTION

11 U.S.C. § 523(a)(2)(A))

48. The Plaintiff restates the allegations contained in paragraphs 1-47 above and incorporate the same by reference as if fully set forth herein.

49. Under 11 U.S.C. § 523(a)(2)(A), a debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by…false pretenses, false representation or actual fraud…" is excepted from a discharge under 11 U.S.C. § 1328(b).

50. Debtor obtained a loan from Plaintiff under false pretenses representing that the Loan would be secured and repayment would occur upon sale of the Real Property.

51. Debtor repeatedly made false representations to Plaintiff regarding documentation evidencing the loan and the method of repayment of the loan, including that the loan would be repaid upon the sale of the Real Property and that documentation existed evidencing Plaintiff's interest in the Real Property.

52. The Debtor's representations that the loan was secured and would be repaid upon the sale of the Real Property were material and false at the time they were made.

53. The Debtor knew the representations were false, he intended that Plaintiff would rely on the false representations in extending the Loan, and they were made to induce the Plaintiff to extend the Loan to Debtor.

AMENDED ADVERSARY COMPLAINT – Page 7

54. In justifiable reliance upon Debtor's representations and without knowledge of their falsity, Plaintiff withdrew funds from his personal retirement account and transferred the proceeds to Debtor's bank account.

55. Plaintiff has suffered damages in the principal amount of $115,000.00 and accrued interest of $85,541.10, which interest continues to accrue at the rate of $15.75 per diem.

## SECOND CAUSE OF ACTION

11 U.S.C. § 523(a)(6)

56. The Plaintiff restates the allegations contained in paragraphs 1-55 above and incorporate the same by reference as if fully set forth herein.

57. Under 11 U.S.C. § 523(a)(6), a debt resulting from "willful and malicious injury by the debtor to another entity or to the property of another entity" is excepted from a discharge under 11 U.S.C. § 1328(b).

58. The Debtor knowingly, intentionally, and willfully failed to include the Plaintiff's Claim in his Illinois Bankruptcy.

59. Because Plaintiff's Claim was not listed in the Debtor's Illinois schedules and included in the Illinois Ch. 13 Plan, the Plaintiff did not receive full payment of his claim in the Illinois Bankruptcy pursuant to the Illinois Ch. 13 Plan.

60. The Debtor has scheduled Plaintiff's Claim in the subject bankruptcy and proposes a Chapter 13 plan that will pay approximately 2% of Plaintiff's Claim.

7. Accordingly, the Plaintiff's failure to schedule Plaintiff's Claim in the Illinois Bankruptcy has caused injury to Plaintiff because the Plaintiff will receive a payment of 2% of his claim rather than payment of 100% of his claim.

**PRAYER FOR RELIEF**

Wherefore, the Plaintiff prays for judgment against the Debtor as follows:

A. Money Judgment in the sum of $200,541.10, comprised of the principal sum of $115,000.00 and accrued interest of $85,541.10 to June 10, 2024, which interest continues to accrue from said date at the rate of $15.75 per diem until entry of the judgment and thereafter at the highest lawful rate until paid;

B. That the Court enter an order that the debt owed by Debtor to Plaintiff is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A);

C. That the Court enter an order that the debt owed by Debtor to Plaintiff is nondischargeable pursuant to 11 U.S.C. § 523(a)(6);

C. For such other and further relief as the Court deems just.

DATED this 27th day of August, 2024.

RACINE OLSON, PLLP

By: /s/ Heidi Buck Morrison
    HEIDI BUCK MORRISON

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 27th day of August, 2024, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Alexandra O Caval
alex@cavallawoffice.com
R71985@notify.bestcase.com

AND I FURTHER CERTIFY that on such date I served the foregoing on the following non-CM/ECF Registered Participants via U.S. Mail, First-Class, postage prepaid and addressed as follows:

Stephen A Devereaux
509 N Lyndon St
Jerome, ID 83338

/s/ Heidi Buck Morrison
HEIDI BUCK MORRISON

# EXHIBIT A

TEXT EXCHANGE WILLIAM HOROSZKO AND STEPHEN DEVEREAUX
February 12, 2022

WILLIAM HOROSZKO
Hey there chief
Kind of concerned about getting my $115k+ back, as I heard today that you received a large payout in December
Please tell me that if this is true that you're cutting me a check for at least $115K as repayment for that portion of the house that i owned, purchased from Karen D. with my 401k funds at the time of your first divorce?

STEPHEN DEVEREAUX
There is your amount set aside in the escrow Bill
It was not a large amount.

WILLIAM HOROSZKO
Steve I'm sorry for jumping to conclusions but you have to know that this is retirement money that we need to set aside for Tim after we're gone so I apologize if I hurt your feelings but need to make sure that my son is taken care of after we're gone

STEPHEN DEVEREAUX
Bill I completely understand and you did not hurt my feelings

WILLIAM HOROSZKO
Also, the original 401K withdrawal is something that the IRS keeps close watch on so getting it back into 401K sooner then later is extremely important to avoid all kinds of taxes and penalties

STEPHEN DEVEREAUX
I do understand